NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.G. and C.K.

No. 1 CA-JV 22-0254
FILED 5-2-2023

---

Appeal from the Superior Court in Maricopa County
No. JD529145
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

---

COUNSEL

Brittany K., Mesa
*Appellant*

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Advisory Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**P A T O N**, Judge:

¶1        Brittany K. ("Mother") appeals from the superior court's order denying her motion to set aside the order terminating her parental rights as to her two children.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother has two children who are parties to this appeal: E.G., who was born in 2016, and C.K., who was born in 2020.

¶3         In April 2020, the superior court adjudicated E.G. dependent based on the Department of Child Safety's ("DCS") allegations that Mother abused substances, neglected E.G., failed to protect her from abuse, and exposed her to domestic violence.  Over the next year, Mother engaged in some reunification services offered by DCS, but failed to complete domestic abuse counseling or substance abuse treatment.

¶4        In October 2020, Mother's boyfriend violently assaulted her in a motel room while she was resting in bed with two-week-old C.K.  Police reported Mother had "obvious signs of injury" including a swollen and bloody lip, a black eye, and bruising across her back and stomach.  When police officers entered Mother's motel room, they found two-week-old C.K. alone in bed and noticed marijuana and empty bottles of alcohol scattered on the floor.  Police contacted DCS, and DCS took temporary custody of C.K.

¶5        Later that day, a DCS caseworker took C.K. to the hospital after noticing "a large red mark around the pupil of [the baby's] eye."  An MRI revealed several small bleeds in C.K.'s brain, and his physician said the bleeding was consistent with "blunt force trauma."  The superior court later adjudicated C.K. dependent.

¶6        In June 2022, DCS moved to terminate Mother's parental rights because the children had been in out-of-home placements for over fifteen months.  Mother appeared at the initial hearing, and the superior court scheduled a pretrial conference for early October and a termination hearing later in October.  The court warned Mother that failure to appear at the pretrial conference could constitute "an admission to all the facts in the petition" and that the court could proceed with the termination hearing in her absence.

¶7        Mother failed to appear at the pretrial conference.  Mother's counsel was present and stated that she could not reach Mother and was

not sure why Mother was not present. The superior court determined Mother failed to appear without good cause and granted DCS's request to proceed with the termination hearing in Mother's absence. After reviewing the parties' exhibits and hearing testimony from a DCS specialist familiar with the case, the superior court terminated Mother's parental rights to E.G. and C.K.

**¶8** Nearly two weeks later, Mother moved to set aside the termination order, arguing she had good cause for her failure to appear because she "ha[d] COVID [and] was too ill" to attend the pretrial conference or to "notify anyone of the cause for her absence." In support of her motion, Mother attached an undated photograph of a positive at-home COVID-19 test. DCS objected to Mother's motion, noting that although Mother had canceled two supervised visits due to COVID-19 the week before September 27, 2022, Mother said nothing about being ill or unable to attend the hearing when she spoke to her caseworker two days before the pretrial conference. DCS also alleged that the photograph of the positive COVID-19 test Mother attached to her motion was the same photograph she submitted to the agency when she claimed she was too ill to visit with the children. The superior court denied Mother's motion to set aside.

**¶9** Mother timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶10** Mother argues her case should be reopened because she had good cause for failing to attend the pretrial conference. Specifically, Mother argues she missed the hearing because she was "super sick" with COVID-19 and was unable "to get out of bed for days."

**¶11** We review an order denying a motion to set aside judgment for an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007). The superior court may set aside a termination order entered after a parent's failure to appear at a termination hearing if the parent can establish "good cause" for her failure to appear. *See Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304-5, ¶ 16 (App. 2007). To establish good cause, a parent must show (1) excusable neglect and (2) a meritorious defense to the claims. *Id.* "Excusable neglect exists if the neglect or inadvertence 'is such as might be the act of a reasonably prudent person in the same circumstances.'" *Id.* (quoting *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163 (App. 1993)).

**¶12**     Here, the superior court had sufficient evidence to find that Mother's failure to attend the pretrial conference was not due to excusable neglect. The superior court advised Mother of her upcoming court dates, including the pretrial conference and termination hearing dates, and warned that failure to appear at the hearings "may be deemed an admission to all the facts in the petition." The court noted that Mother spoke to DCS two days before the pretrial conference but "did not indicate . . . that she was suffering from COVID symptoms" or that she would be unable to participate in the hearing.

**¶13**     Further, the superior court found Mother failed to establish that COVID-19 prevented her from appearing for the pretrial conference. The court reasoned that Mother "failed to provide any corroborating COVID test that documents the date of the test and Mother's name on the test." Instead, Mother appeared to present the same photo of an at-home COVID test she had submitted to DCS the previous month to excuse her failure to appear at scheduled visits with her children.

**¶14**     On this record, the superior court had sufficient evidence to determine that a reasonably prudent person facing the termination of her parental rights would have communicated with her attorney or DCS that she was too sick to appear at the hearing or would have complied with DCS's request to submit a dated and named COVID-19 test. Because Mother has not shown excusable neglect, we need not address whether she had a meritorious defense to the claims. *See Christy A.*, 217 Ariz. at 304, ¶ 16. The superior court did not abuse its discretion in denying Mother's motion to set aside judgment.

## CONCLUSION

**¶15**     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA